UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| BRAD L. RITENOUR, | ) | Case No. 5:05 CV 1478 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | MEMORANDUM OPINION |
| | ) | AND ORDER |
| | ) | (Resolving Docket Nos. 16, 21) |
| STATE FARM MUTUAL | ) | |
| AUTOMOBILE INSURANCE | ) | |
| COMPANY, | ) | |
| | ) | Magistrate Judge James S. Gallas |
| Defendant. | ) | |
| | ) | |

Plaintiff Brad L. Ritenour's lawsuit was filed in the Court of Common Pleas for Tuscarawas County, Ohio and removed by defendant State Farm Mutual Automobile Insurance Co. (State Farm) to federal court on the basis of diversity jurisdiction. Although the complaint is premised on declaratory judgment, there is a demand for compensatory and punitive damages and based on the stipulation of fact (Docket No. 17), there clearly is an actual case and controversy over the denial of medical payment insurance coverage in the amount of $15,902.00 in the first count of the complaint and "bad faith claim" in processing the claim of insured in the second count. See *Hoskins v. Aetna Life Ins. Co.*, 6 Ohio St.3d 272, 452 N.E.2d 1315 (1983) (failure to pay medical expenses in violation and breach of terms of policy).

At the case management conference the parties agreed that the key issue is whether State Farm's denial of medical payment coverage stands in breach of contract, and the court granted

5:05 CV 1478                                                          2

leave for Mr. Ritenour to move for partial summary judgment on the first count of the complaint with stipulated facts, and for State Farm to respond.

According to the factual stipulation, Mr. Ritenour purchased liability and medical insurance coverage through an agent of defendant State Farm in Tuscarawas County, Ohio to insure a 2001 Ford F150 pickup truck, which was garaged in Ohio.  On March 31, 2003, Mr. Ritenour while walking across an intersection in Marietta, Ohio,  was struck by a motor vehicle driven by Michael Hercher.  Mr. Ritenour sustained physical injuries and demanded medical payment coverage under the medical payments provision of the policy in question for medical bills in the amount of $15,902.00 arising from the pedestrian-motor vehicle collision.

The medical payment provisions in the policy State Farm issued to Mr. Ritenour and designated as "Coverage C" provides for coverage of necessary medical expenses including surgical, x-ray, dental, ambulance, hospital, professional, nursing and funeral services incurred for bodily injury.  There is no dispute that Mr. Ritenour did suffer bodily injury as a result of the collision and the policy provides coverage extends to medical expenses for bodily injury sustained by, "the **first person** named in the declarations" (emphasis in original).  There is no dispute that Mr. Ritenour is that person.  Coverage also extends to bodily injury sustained, "through being struck as a **pedestrian** by a motor vehicle or trailer."  (See §II- Medical Payments - Coverage C,  pg. 9).  Thus up to this point there is no dispute that Mr. Ritenour met the requirements of Coverage C for medical payments.  However, excluded from this coverage

5:05 CV 1478                                            3

are "medical expenses for **bodily injury**: . . . (b) TO THE EXTENT WORKERS' COMPENSATION BENEFITS ARE REQUIRED TO BE PAYABLE [.]"

The parties stipulate that Mr. Ritenour worked for a complying employer under Ohio's Workers' Compensation Act, and that Mr. Ritenour did not file a workers' compensation claim within the two-year period of Ohio Revised Code §4123.84(A)(1).  In fact, Mr. Ritenour allowed more than two years to pass before initiating this lawsuit against State Farm. The parties have implicitly agreed that Ohio law applies and this is certainly the natural consequence of any conflict in law analysis although State Farm is domiciled in the State of Illinois.  The insurance policy was sold to an Ohio resident through an agency situated in New Philadelphia, Ohio and moreover the policy itself is described as "Ohio Policy Form 9835A."   The parties have asked the court to presume that Mr. Ritenour was injured while in the course and scope of his employment.  Omitted, though, is any stipulation that Mr. Ritenour's injuries were compensable under the state Workers' Compensation Act. The court notes that injuries eligible for workers' compensation coverage may only be compensated under Chapter 4123 of the Ohio Revised Code and must occur "in the course of employment."  See *Fisher v. Mayfield*, 49 Ohio St.3d 275, 277, 551 N.E.2d 1271, 1274 (1990); *Ruckman v. Cubby Drilling, Inc.*, 81 Ohio St.3d 117, 120, 689 N.E.2d 917, 921 (1998); *MTD Products, Inc. v. Robatin*, 61 Ohio St.3d 66, 68, 572 N.E.2d 661, 663-64 (1991)( injuries must be causally related to the activities, conditions and environment of employment).  Depending on the particular employment  circumstances, however, injuries suffered by a pedestrian-employee as a consequence of being struck by a motor vehicle, may not be entitled to workers' compensation benefits.  See *Powers v. Frank Z*

5:05 CV 1478                                          4

*Chevrolet*, 100 Ohio App.3d 718, 721-22, 654 N.E.2d 1053 (2nd Dist. 1995) (no workers' compensation coverage ); *Castaneda v. AE Outfitters Retail Co.*, 2004 WL 2348147 (Ohio App. 9 Dist. 2004) (same); *Selby v. Industrial Commission of Ohio*, 36 Ohio L.Abs. 74, 42 N.E.2d 669 (2nd Dist. 1942) (same); and see 80 ALR 2d 126 "Workmen's Compensation: Street Risk Incurred in Course of Employment." (illustrating differing views under the various state workers' compensation laws).

The parties, however, do not wish to be distracted by whether Mr. Ritenour's injuries would have been compensable under Ohio's workers' compensation scheme. Rather, they insist on a decision in the abstract based purely on the written clauses of the medical payment insurance contract.  The court finds that the policy terms can be interpreted to ascertain their meaning without grounding them to the particular situation presented in Mr. Ritenour's circumstances, or whether this incident involving Mr. Ritenour's crossing the street would be deemed "in the course of employment" for purposes of Ohio's Workers' Compensation Act.

Ohio jurisprudence requires that insurance contracts be construed in accordance with the same rules as are other written contracts.  See *Hybud Equip. Corp. v. Sphere Drake Ins. Co., Ltd.*, 64 Ohio St.3d 657, 665, 597 N.E.2d 1096 (1992); *Rhoades v. Equitable Life Assur. Soc. of U.S.*, 54 Ohio St.2d 45, 374 N.E.2d 643 (1978).  Moreover, as outlined in the Sixth Circuit:

> When the 'terms of an insurance policy are clear and unambiguous," Ohio law requires a court to "appl[y] [them] to the facts without engaging in any construction." *Ledyard v. Auto-Owners Mut. ins. Co.*, 137 Ohio App.3d 501, 739 N.E.2d 1, 3 (2000) (citation and quotation omitted).  Conversely, when the insurer has drafted the contract and the

5:05 CV 1478                                              5

>     "provisions of a contract of insurance are reasonably susceptible of more than one interpretation, a court must "construe[ ] [the terms] strictly against the insurer and liberally in favor of the insured." *King v. Nationwide Ins. Co.*, 35 Ohio St.3d 208, 519 N.E.2d 1380, 1383 (1988).

*Toledo-Lucas County Port Auth. v. AXA Marine & Auto Ins. (UK), Ltd.*, 368 F.3d 524, 530 (6th Cir. 2004); and see *Westfield Ins. Co. v. Galatis*, 100 Ohio St.3d 216, 220, 797 N.E.2d 1256 (2003) ("[W]here the written contract is standardized and between parties of unequal bargaining power, and ambiguity in the writing will be interpreted strictly against the drafter's . . . ") Conversely, "this court cannot make a new contract for the parties where they themselves have employed express and unambiguous terms." See *Kerry v. State Farm Mutual Auto Ins. Co.*, 60 Ohio App.2d 8, 10, 14 O.O.3d 7, 8, 395 N.E.2d 375 ( 3rd Dist.1978). The intent of the parties is presumed to be reflected in the language used in the policy. *Westfield*, 100 Ohio St. 3d at 219; *Kelly v. Med. Life Ins. Co.*, 31 Ohio St.3d 130, 509 N.E.2d 411 (1987) (syllabus ¶1).

Mr. Ritenour attempts to read ambiguity into the very clear language of the instrument because in State Farm's letter denying benefits it explained:

> The medical payments coverage on your personal auto policy has an exclusion for coverage when workers' compensation benefits apply. (Exhibit B to stipulation).

The language of the medical payments under "Coverage C" does not use the broad term "apply." The exclusion occurs only when workers' compensation benefits are "required to be payable." State Farm attempts to evade the consequences of this language by referring to the fact that medical payment coverage is simply a matter of contract between the insurer and

5:05 CV 1478                                      6

insured,[1] and that neither public policy nor any statute is violated by an insurance contract clause excluding medical payments for workers' compensation covered injuries because the clause, "merely allows for setoff on medical expense payments to insure that there is no double recovery."[2]

State Farm further analogizes this case to the facts in *Kerry, supra,* where the policy exclusion stated in clear language that "Coverage C" benefits for bodily injury were benefits that were "in whole or in part either payable or required to be provided under any workmen's compensation law" were excluded.  This language stands in stark contrast to the "required to be payable" language actually used in the policy in question.  State Farm also believes that this court should follow the decision in *Indelicato v. Capers*, 1988 WL 54701 (E.D. La. May 24, 1988), where identical language, excluding benefits required to be payable, was used. However, in *Indelicato*, the workers' compensation benefits were in fact paid, which mooted any issue over whether such benefits were "required to be payable."

Mr. Ritenour points to three state court decisions finding ambiguity in identical "required to be payable" language of exclusion.  See *Walters v. State Farm Mut. Auto Ins. Co.,* 793 S.W.2d 217 (Mo. App. S.D. 1990); *State Farm Mut. Auto Ins. Co. v. Ley*, 844 S.W.2d 70

---

[1] *Karabin v. State Auto Mut. Ins. Co.*, 10 Ohio St.3d 163, 462 N.E.2d 403 (1994) (syllabus ¶2).

[2] *Duriak v. Globe American Cas. Co.*, 28 Ohio St.3d 70, 73, 502 N.E.2d 620 (1996), overruled on other grounds, *Miller v. Progressive Cas. Ins. Co.*, 69 Ohio St.3d 619, 635 N.E.2d 317 (1994).

5:05 CV 1478                                             7

(Mo. App. E.D.1992); *State Farm Auto Ins. Co.*, 118 Nev. 299, 43 P.3d 1018 (2002).[3] The decisions from Missouri found ambiguity between the mandatory term, "required," and the permissive term, "payable." In Nevada, the decision was built on ambiguity based on the subrogation requirement for the element to repay workers' compensation benefits from the proceeds from a lawsuit against a third-party tortfeasor. The court found that where the insured is required to reimburse the workers' compensation fund out of his recovery, the workers' compensations benefits were never "payable" since the insured was left in the same situation as one who had not received workers' compensation benefits. *Id.* at 305, 43 P.3d at 1022. The state court concluded that the policy exclusion did not apply to medical expenses initially paid by workers' compensation but ultimately reimbursed from recovery from the third-party tortfeasor. *Id.*, 118 Nev. at 300, 43 F.3d at 1019. This court, though, cannot utilize the rationale in the Nevada decision because the parties' stipulations state nothing about any recovery from Mr. Hercher, the driver of the car that struck Mr. Ritenour.

More importantly, the court is not convinced that the "required to be payable" language evidences ambiguity. First, "required to be payable" clearly refers to workers' compensation benefits paid under the authority of the state bureau, as had occurred in *Indelicato v. Capers* and in *Kerry*.[4] Second, the language in Coverage C excluding medical expenses, to the extent

---

[3] The decision by the Nevada Supreme Court was in response to a request for certification in *Rubin v. State Farm Mut. Auto Ins. Co.*, 222 F.3d 750 (9th Cir. 2000). And see 292 F.3d 639 (9th Cir. 2002).

[4] See *Indelicato*, 1988 WL 54701 at *2; *Kerry*, 60 Ohio App.2d at 9.

5:05 CV 1478                                   8

workers' compensation benefits are required to be payable, appears to concern the situation when unrequired payments are made by the employer under Ohio Revised Code §4123.84(A). See *Hull v. Mayfield*, 70 Ohio App.3d 453, 54 N.E.2d 377 (1990); *Brady v. York International Borg Warner*, 62 Ohio App.3d 739, 577 N.E.2d 435 (1989);  *Bush v. Mayfield*, 31 Ohio App. 3d 38, 39, 508 N.E.2d 181, 182-83 (1986).  For example in *Brady,* the medical expenses were paid to the employee under an employer-provided non-occupational accident insurance policy. *Id.*, 62 Ohio App.3d at 741-42.  The decision was that the employee's receipt of sickness and accident insurance payments did not constitute compensation or benefits within the contemplation of §4123.84(A)(3)(b).  *Id.*

Ohio Revised Code §4123.84 has the primary purpose of setting forth a two-year statute of limitations in filing a workers' compensation claims.  However, the legislature did find it necessary to address the instances where the employer makes voluntary payments or carries insurance which provides reimbursement for lost wages and medical expenses.  The clauses under this section are as follows:

> (2) The employer, with knowledge of a claimed compensable injury or occupational disease, has paid wages in lieu of compensation for total disability.
>
> (3) In the event the employer is a self-insuring employer, one of the following has occurred:
>
>> (a) Written or facsimile notice of the specific part or parts of the body claimed to have been injured has been given to the commission or bureau *or the employer has furnished treatment by a licensed physician in the employ of an employer*, provided, however, that the furnishing of such treatment shall not

5:05 CV 1478                                         9

>   constitute a recognition of a claim as compensable, but shall do no more than satisfy the requirements of this section;
>
>   (b) Compensation or benefits have been paid or furnished equal to or greater than is provided for in sections 4123.52 [etc.].

Ohio Revised Code, §4123.84(A)(Anderson 2001) (emphasis supplied).[5]

The verbiage of "Coverage C" for medical payments aligns with the rationale in *Brady*, by not excluding the unrequired workers' compensation benefits. Thus Mr. Ritenour could receive payment under an employer-provided accident non-occupational policy and collaterally receive reimbursement for his medical claims under "Coverage C." There would be no exclusion because those were not workers' compensation benefits required to be payable.[6]

State Farm claims that "required to be payable" equates with a duty upon Mr. Ritenour to prosecute a worker's compensation claim under the terms of the policy. The exclusion of workers' compensation benefits required to be payable, applies to benefits which have been paid directly under the state workers' compensation administrative system or pursuant to judicial decree ordering the bureau to make payment. The policy does not contain language to

---

[5] The parties insist that this case be decided in the insurance policy's terms and do not request the court to determine whether §4123.84's two-year statute of limitations has yet run.

[6] Because Mr. Ritenour took out his own insurance policy, there is no involvement of Ohio Revised Code §4123.82(A)'s prohibition because it was not an employer's policy providing for insurance for worker's death, injury or occupational disease. There is no effort to circumvent the state worker's compensation scheme.

5:05 CV 1478                                                    10

demonstrate that this was not the parties' intention.  The insurance policy's introductory provisions with respect to medical payments for bodily injury require: (1) notification to State Farm; (2) provision of "all details about the death, injury, treatment and other information [needed] to determine the amount payable;" (3) to permit medical examination and release of medical records; and (4) to respond to both oral and written questions.  (See page 5 of policy).  This is further reinforced by the medical payment subrogation clause under part 3 of "Conditions" on page 24 which reads:

> (2) if the **person** to or for whom we have made payment has not recovered from any party liable for the **bodily injury**, he or she shall
>   (a) Not hurt our rights to recover;
>   (b) keep these rights in trust for us;
>   (c) execute any legal papers we need; and
>   (d) when we ask, take action through our representative to recover our payments.

The preconditions of State Farm making medical payment followed by its request for the insured to take action to recover those payments do not appear in the stipulated facts.  There is no language to place a duty on the insured to commence suit until State Farm met its own preconditions.

Finally, there is no duty to file for workers' compensation under state law.  This is evidenced by §4123.84, which allows claims for workers' compensation benefits to expire.  There is a duty on the employer to report injuries and occupational diseases pursuant to §4123.28.  However, the employer's report does not constitute filing of the claim with the state Bureau of Workers' Compensation.  Rather, as the statute states, each day the employer fails

5:05 CV 1478                                              11

to report delays §4123.84(A)'s two-year statute of limitations. In any event, there is no statutory or contractual requirement for the insured to file a workers' compensation claim.

This leaves State Farm's last defense of failure to mitigate. State Farm argues that Mr. Ritenour had a legal duty to prosecute a workers' compensation claim with the Bureau of Workers' Compensation in order to mitigate damages for medical payments due under the insurance policy. State Farm claims that assuming that it stands in breach of the written contract for insurance by failing to pay Mr. Ritenour's medical expenses, he is barred from recovery due to failure to mitigate damages. This argument is based on a misunderstanding of the concept of mitigation. State Farm is correct that Ohio law recognizes mitigation of damages as a matter to be considered in contractual breach. See *F. Enterprises, Inc. v. Kentucky Fried Chicken Corp.*, 47 Ohio St.2d 154, 159-60, 100 O.O.3d 90, 351 N.E.2d 121 (1976). However, State Farm is not asking Mr. Ritenour to reduce his medical expense demand. Rather State Farm is demanding that Mr. Ritenour offset one collateral source for his injuries by another. Under state law, workers' compensation is a collateral source of recovery and evidence of such recovery is inadmissible to offset recoverable damages from lawsuit. E.g., *Pryor v. Weber*, 23 Ohio St.2d 104, 109, 52 O.O.2d 395, 397-98, 263 N.E.2d 235 (1970); *Berge v. Columbus Comm. Cable Access*, 136 Ohio App.3d 281, 327-28, 736 N.E.2d 517 (10th Dist.1999) (collateral source rule of *Pryor* continues to preclude offset of any collateral benefits received by plaintiff).

5:05 CV 1478                                              12

For sake of comparison, Ohio's Victims of Crime Act imposes a duty upon the victim to recover and offset from collateral sources "readily available to the victim," including workers' compensation, any wage continuation program of the employer, and proceeds of a contract of insurance payable to the victim for loss sustained. See Ohio Revised Code §2743.51(B) and (B)(5)-(7). This statutory intent has been conveyed in a number of ways over the years. The state legislature addressing the matter of offsetting collateral sources had in a prior version of Ohio Revised Code §2743.56(B)(7) excluded the benefits the victim ". . . has received or is entitled to receive from any collateral source . . . " See *In re Schroepfer*, 4 Ohio Misc.2d 15, 448 N.E.2d 528 (Ohio Ct. Cl. 1983) (where the applicant's failure to file prevented him from receiving such collateral source benefits such allowable expense shall be considered as though it had been recouped from a "readily available" collateral source). More recently, amendment to Ohio Revised Code §2743.60(D) anticipates the problem of claimant inertia by providing for offset of collateral sources that were available and adding:

> If the award or denial is conditioned upon the recoupment of the claimant's economic loss from a collateral source and it is determined that the claimant did not unreasonably fail to present a timely claim to the collateral source and will not receive all or part of the expected recoupment, the claim may be reopened and an award may be made in the amount equal to the amount of expected recoupment that it is determined the claimant will not receive from the collateral source.

However, there is nothing comparable to this language discouraging inertia in collateral source recovery in the insurance policy. State Farm has made it abundantly clear in briefing that such an offset could be included in the policy as a contractual matter between the insured and insurer. However, no such offset or duty to attempt recovery from other collateral sources was contained in the policy of insurance. As explained previously, exclusion of workers'

5:05 CV 1478                                        13

compensation benefits "required to be payable" is linked to the voluntary payment issue as addressed by Ohio Revised Code §4123.84(A).

This then leads to the issue in the second count of the complaint alleging lack of good faith in settlement. There is a tort of breach of duty to act in good faith in processing the claim of the insured. *LeForge v. Nationwide Mut. Ins. Co.*, 82 Ohio App.3d 692, 697, 612 N.E.2d 1318 (1992); *Dennis v. State Farm Ins. Co.*, 143 Ohio App.3d 196, 204, 757 N.E.12d 849 (7th Dist. 2001); *Hoskins v. Aetna Life Ins. Co.*, 6 Ohio St.3d 272, 277, 452 N.E.2d 1315 (1993); *Hart v. Republic Mut. Ins. Co.*, 152 Ohio St. 185, 188, 39 O.O. 465, 466, 87 N.E.2d 347 (1949). This is simply the assertion that the insurer acted on caprice or whim and not on conduct that was reasonably justified. *Hart*, 152 Ohio St. at 188. "[A] lack of good faith in determining coverage involves conduct that occurs when assessment of coverage is being considered." *Boone v. Vanliner Ins. Co.*, 91 Ohio St.3d 209, 213, 744 N.E.2d 254 (2001). Ohio's law defining bad faith refusal to settle claims of loss from fire as refined by *Zoppo v. Homestead Ins. Co.*, 71 Ohio St.3d 552, 644 N.E.2d 397 (1994), does not contain the element of actual intent. *Id.* at 397, 399. It is only necessary for the insured to establish that the refusal to settle was not made with reasonable justification. *Id.*

Mr. Ritenour alleges that State Farm is liable to him due to its failure to act in good faith with respect to the settlement of the claim, and State Farm has moved for summary judgment on this point (Docket No. 18) Mr. Ritenour objects, pointing to the court's case management conference order which permitted only his motion for partial summary judgment on the issue

5:05 CV 1478                                          14

of entitlement to medical payments coverage under the insurance policy  Mr. Ritenour's objection is sustained.  The court case management order granted leave only for Mr. Ritenour's motion for partial summary judgment with stipulated certification of uncontested facts.  Further dispositive motions were to be filed after completion of discovery with the discovery cutoff date to be determined following ruling on Mr. Ritenour's motion for partial summary judgment.  The court cannot ignore its own order. Accordingly, Mr. Ritenour's motion to strike or in the alternative respond  (Docket No. 21) is moot, and the issues raised in the second count of the complaint will not be addressed until the completion of discovery.

Accordingly Mr. Ritenour's motion for partial summary judgment with respect to his claim of State Farm's breach of the medical payment provision in the insurance policy (docket No. 16) is granted with judgment to be entered in the amount of $15,902.00, and his motion to strike (Docket No. 21) is denied as moot.

                                              s/James S. Gallas
                                          United States Magistrate Judge

Dated: April 12, 2006